IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEFFERY KELLY                                                                                     PLAINTIFF

V.                                               NO. 13-5195

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Jeffery Kelly, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff filed his applications for DIB and SSI on April 8, 2010, alleging disability since November 10, 2009, due to back problems, problems with knees, and pins in hands. (Tr. 124-126, 128-131, 137, 141). An administrative hearing was held on December 12, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 27-59).

By written decision dated February 24, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – back and knee pain, s/p right knee surgery, prior injury to right hand, diabetes mellitus, obesity, anxiety disorder, and antisocial personality disorder with borderline traits. (Tr. 11). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's

1

impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform:

> Sedentary [work] defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift and carry 10 pounds occasionally and up to 10 pounds frequently. He is able to stand and/or walk up to 2 hours out of an 8 hour workday, and is able to sit at least 6 hours in an 8 hour workday, all with normal breaks. He is able to engage in interpersonal contact incidental to work performed, and is able to perform, simple and some complex or detailed work.

(Tr. 15). With the help of a vocational expert (VE), the ALJ determined Plaintiff was capable of performing his past relevant work as a case aide. (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on July 12, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 15, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Evidence Presented:**

Plaintiff alleges his onset date is November 10, 2009. (Tr. 137).[1] During the relevant time period, on April 5, 2010, Plaintiff saw Vicki Moore, APN, of St. Francis Community Clinic of Siloam Springs, complaining of left knee pain. (Tr. 668). Plaintiff was assessed with joint pain-lower leg, and hyperglycemia, NOS. (Tr. 668). At that time, he was told to

---

[1] The record contains medical records dating back several years prior to the relevant time period, and the ALJ and the Court considered said records. However, the Court will focus on those records dating from the onset date – November 10, 2009. "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Cox v. Barnhart, 471 F.3d902, 907 (8th Cir. 2006).

2

diet and exercise and quit smoking. (Tr. 669). Plaintiff was not ready to quit smoking at that time. (Tr. 669).[2]

On June 21, 2010, Dr. Tad Michael Morgan conducted a General Physical Examination. (Tr. 679-683). Dr. Morgan found that the ranges of motion in Plaintiff's extremities were normal except his right wrists palmar flexion was 0-40 degrees instead of 0-60 degrees, and his left knee flexion was 0-120 degrees rather than 0-150 degrees. (Tr. 681). Plaintiff's spine range of motion was within normal limits. (Tr. 681). Dr. Morgan found Plaintiff walked with a limp, but was able to perform limb functions, except he did use a cane (by history) and could not walk on his heels and toes because of pain in his left knee and poor balance. (Tr. 682). Dr. Morgan found Plaintiff had severe limitation in his ability to walk, stand, lift, or carry and had moderate limitation in his ability to handle and finger. (Tr. 683).

On June 23, 2010, x-rays of Plaintiff's left knee revealed mild to moderate degenerative changes, without evidence of acute abnormality. (Tr. 694). X-rays of Plaintiff's lumbar spine revealed mild scattered degenerative changes. (Tr. 701). On June 24, 2010, x-rays of Plaintiff's spine revealed lumbar/lumbosac disc degeneration. (Tr. 691).

On June 30, 2010, non-examining consultant, Dr. Dan Gardner, completed a Physical RFC Assessment (Tr. 704-711). Dr. Gardner found Plaintiff was capable of performing light work. (Tr. 705). On August 23, 2010, Dr. Bill F. Payne affirmed the assessment dated June 30, 2010. (Tr. 712).

On August 26, 2010, Plaintiff presented himself to St. Francis Community Clinic, where he was initially taught how to inject insulin, because he had diabetes. (Tr. 756). He was assessed with uncontrolled diabetes. (Tr. 756). Nurse Moore assessed Plaintiff with

---

[2] Plaintiff testified at the hearing that he smoked between one pack to two packs of cigarettes per day. (Tr. 47).

uncontrolled diabetes, joint pain-lower leg, sinusitis, bronchitis NOS, and allergic rhinitis due to unspecified causes. (Tr. 759).

Plaintiff again presented himself to St. Francis Clinic on September 2, 2010, and reported that activity was a problem for him because of his painful left knee. (Tr. 754). However, it was noted that he walked several blocks to the clinic that day. (Tr. 754). He was not taking Metformin at that time. (Tr. 754). Plaintiff was assessed with uncontrolled diabetes. (Tr. 754).

Plaintiff saw Nurse Moore on September 9, 2012, complaining of ear pain. (Tr. 749). He also stated his left elbow was hurting when he turned and lifted anything and that he lost grip. (Tr. 749). Plaintiff was assessed with tendonitis NOS, allergic rhinitis NOS, and left elbow issues. (Tr. 749). Plaintiff was reported as appearing very uncomfortable and had a painful left elbow/shoulder. His diabetes was reported as uncontrolled. (Tr. 751).

On September 15, 2010, a Mental Diagnostic Evaluation was conducted by Terry L. Efird, Ph.D. (Tr. 685). Plaintiff reported experiencing chronic pain, and when asked about mental difficulties, he talked about having a bad temper and not liking to be around people. (Tr. 685). A history of outpatient mental health services reportedly occurred through OGC about two years previously, for about 5-6 months, and financial obstacles to treatment were reported. (Tr. 66). Plaintiff reported having previously used methamphetamine for about 10 years, including IV usage. (Tr. 686). He also reported having abused alcohol for most of his life, until about five to six years previously. (Tr. 686). Plaintiff was reported as walking with a limp, having difficulty hearing questions, and was quite self-absorbed at times. (Tr. 687). Dr. Efird diagnosed Plaintiff as follows:

    Axis I:        Anxiety Disorder NOS

      Axis II:       Antisocial Personality Disorder, with borderline traits (primary diagnosis)

      Axis V:       50-60

(Tr. 688). Dr. Efird found Plaintiff's ability to shop independently was endorsed; the ability to handle personal finances adequately was endorsed; and the ability to perform most ADL's adequately was described as impaired to some extent by physical problems. (Tr. 688). Dr. Efird found that Plaintiff communicated and interacted in a reasonably socially adequate manner and was remarkably self-absorbed and a bit difficult to re-direct at times; communicated basic information in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities; had no remarkable problems with persistence but noted that motivation would play a big role in this area of functioning; and his mental pace of performance was probably moderately slow at times during the evaluation. (Tr. 689). Dr. Efird reported that given the primary diagnosis, he would suggest that malingering be ruled out.[3] (Tr. 689).

On September 16, 2010, a Mental RFC Assessment was completed by non-examining consultant, Dr. Winston Brown. (Tr. 713). Dr. Brown found Plaintiff was able to perform unskilled work. (Tr. 715-716). Dr. Brown also completed a Psychiatric Review Technique form, and found that Plaintiff had a mild degree of limitation in activities of daily living; moderate degree of limitation in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. (Tr. 717).

On September 16, 2010, Nurse Moore saw Plaintiff regarding follow up on his diabetes. (Tr. 745, 747). Plaintiff was experiencing pain in both shoulders, elbows, legs, and

---

[3] The ALJ recognized Dr. Efird's recommendation that Plaintiff be evaluated for malingering, but found that no other evidence justified or rationalized a suspicion of malingering and therefore, no such testing was performed. (Tr. 18-19).

his ears. (Tr. 747). He was assessed with diabetes mellitus, type II; tendinitis NOS; and allergic rhinitis NOS. (Tr. 747).

On September 30, 2010, Plaintiff reported to St. Francis Clinic that he was out of most medications with no resources to get refills. (Tr. 743) Plaintiff was still experiencing pain in his left arm/shoulder, had less numbness in his fingers, and reported he tried to work again but after 4 hours of standing was unable to walk for 2 and ½ days. (Tr. 743). Plaintiff had been off Metformin and insulin for at least two days. He appeared depressed because of his pain. Plaintiff was assessed with uncontrolled diabetes, otitis externa, chronic, and tendonitis, NOS. (Tr. 743-744).

On October 28, 2010, Plaintiff reported to St. Francis Clinic that he still had left arm/shoulder pain. (Tr. 737). His diabetes was still uncontrolled, but was moving slowly downward. (Tr. 737). He was assessed with uncontrolled diabetes, otitis externa, chronic, and tendinitis NOS. (Tr. 737).

On November 11, 2010, Plaintiff reported to St. Francis Clinic that he had not eaten and had been out of Metformin for 6 days and did not have a resource to purchase it. (Tr. 735). He was experiencing upper left chest discomfort and reported not exercising much, but did walk to the clinic that day (1 mile round trip). He had no motivation to exercise. (Tr. 735). The importance of obtaining medications was discussed with him, and it was pointed out that he could request that people buy his medications rather than cigarettes. He refused to stop smoking. (Tr. 735).

By August 18, 2011, Plaintiff reported to the St. Francis Clinic in Rogers, and needed medication refills, and was having a tooth ache. (Tr. 771). Plaintiff was assessed with diabetes mellitus type II, obesity NOS, tobacco use disorder, dental disorder NOS, and

6

elevated blood pressure reading without diagnosis of hypertension. (Tr. 772).  Plaintiff saw Dr. Latifat Ogon on August 23, and August 31, 2011, and was assessed on August 31, with hypertension, diabetes mellitus type II, hyperlipidemia, neuropathy in diabetes, tobacco use disorder, and joint pain in his right shoulder. (Tr. 765).

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an

7

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following issues in this matter:  1)  Substantial evidence does not support findings 5, 6 and 7;  2)  There is no substantial evidence to support the decision based on his mental health treatment;  and 3)  The ALJ had no basis upon which to find he could perform substantial gainful employment based on the VE's testimony.  (Doc. 15).

    **A.   Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and

8

aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC. (Tr. 19). The ALJ then pointed out inconsistent statements made by Plaintiff, and also the fact that Plaintiff had worked very little throughout his life. (Tr. 19). The ALJ also considered the factors set forth in Polaski. (Tr. 16-17).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility findings.

### B.     RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

Plaintiff argues the ALJ failed to give Dr. Morgan's opinion sufficient weight. The ALJ discussed Dr. Morgan's examination, noting that he found Plaintiff had a severe limitation in his ability to walk, stand, lift, or carry and a moderate limitation in his ability to handle or finger. (Tr. 17). Dr. Morgan observed deformity of Plaintiff's right wrist and index finger. (Tr. 17). However, the ALJ also noted that Dr. Morgan found Plaintiff had 100% grip strength both hands. (Tr. 17). The ALJ discussed the opinion of Dr. Duane Conover, D.O., who conducted a General Physical Examination of Plaintiff on November 16, 2007, and found Plaintiff could handle, finger, see, hear, and speak, and that the ability to walk, stand, sit, lift and carry were moderately limited as a result of his diagnoses. (Tr. 17-18, 431). The ALJ also addressed all of the Plaintiff's alleged mental impairments and mental evaluations that were conducted, and gave good reasons for the weight he gave to each. (Tr. 18, 20). He gave little weight to the opinions of the DDS consultants regarding Plaintiff's physical ability to perform light work. (Tr. 19-20). The ALJ gave some weight, but not significant weight, to

the DDS consultants regarding Plaintiff's mental capabilities, wherein they found Plaintiff could perform unskilled work, as well as some semi-skilled work. (Tr. 20).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the various mental health providers.

### C. Plaintiff's Ability to Perform Past Relevant Work:

At the hearing, the ALJ had the Plaintiff describe his work at the Salvation Army in detail. (Tr. 54-56). The ALJ then asked the VE to categorize his job from a vocational standpoint. The VE responded as follows:

> VE: Yes, Your Honor. The best match is case aide, DOT 195.367-010, physical demand light, SVP 3, although as the claimant testified he performed it primarily at the sedentary level, though the DOT describes it as light.
>
> ALJ: Okay. Ms. Cozar [sic], do you agree that his past relevant work then?
>
> Atty: Yes, sir, I do.
>
> ALJ: Do you have any issues with the skill or exertional levels given?
>
> Atty: What makes it an SVP 3, the typing and record keeping?
>
> VE: Basically, yes. It requires more than just simple instructions or the ability to process simple tasks. And so SVP 3 is not – is just at the bottom of the semi-skilled level. And this is always under the supervision of a caseworker.
>     . . .
>
> ALJ: …Well, do let me ask her [VE], if you had an individual who couldn't complete an eight hour day, five days a week there would be no work, right?
>
> VE: That's correct, Your Honor.

(Tr. 57-58).

In his decision, the ALJ stated as follows:

11

> The claimant's work as a case aid[sic] is, according to the vocational expert, classified as a light and semi-skilled position that he performed at the sedentary exertion level. He worked from 4 p.m. to midnight at an emergency shelter and spent at least 6-7 hours per day at a desk.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed.

(Tr. 20).

The ALJ permissibly relied on testimony from Plaintiff and the VE in comparing Plaintiff's RFC to the demands of his past relevant work as it was actually performed. See 20 C.F.R. §§404.1560(b)(2), 416.960(b)(2).  At the hearing, Plaintiff or his attorney did not object to the qualifications of the VE or her testimony that Plaintiff performed his past relevant work as a case aid at the sedentary exertional level.

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's finding that Plaintiff would be able to perform his past relevant work as a case aide.

## V.    Conclusion:

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of September, 2015.

             s/ *Erin L. Setser*
             HON. ERIN L. SETSER
             UNITED STATES MAGISTRATE JUDGE